FILED
AUG 19 2005
JUDGE HARRY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

COVENANT MEDIA OF ILLINOIS,

    Plaintiff,

v.

CITY OF CALUMET CITY, ILLINOIS,

    Defendant.

Case No. 05 C 0214

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Plaintiff Covenant Media of Illinois, L.L.C. (hereinafter, "Covenant") filed a fourteen-count complaint against Defendant City of Calumet City, Illinois (hereinafter, the "City") challenging the constitutionality of its "Sign Ordinance." Covenant filed a Motion for Preliminary Injunction, which the Court defers ruling on until after a hearing on the motion. The City subsequently filed a Motion to Dismiss pursuant to FED. R. CIV. P. 12(b)(1) and 12(b)(6), which is **DENIED** for the following reasons.

### I.  BACKGROUND

The following relevant facts are taken in the light most favorable to Covenant, with any conflicting pleadings resolved in its favor. Covenant is a company in the business of erecting and operating advertising signs that are used by businesses, churches, organizations, and individuals to communicate commercial and noncommercial messages. The City is a political subdivision of the



State of Illinois and located in Cook County. This dispute arises from Covenant's application to post signs in the City.

The City has a comprehensive Zoning Ordinance that covers signs, among other things. A "sign" is defined as:

> A name, identification, description, illustration or device which is affixed to, appointed or represented upon a building, structure, or land and which directs attention to a product, place, activity, person, institution or business. . . . However, a sign shall not include any display of any court, public or official notice, nor shall it include the flag, emblem, insignia of a nation, political unit, school, religious or charitable institution or organization. . . .

§ 3.2. An "advertising sign" is further defined as "a structure including a billboard on which is portrayed information which directs attention to a business, commodity, service or entertainment, or other activity not necessarily related to use permitted on the premises upon which such sign is located." *Id.* Section 11.1 of the Zoning Ordinance, entitled "Permitted signs, manufacturing districts," allows the following signs:

> All signs permitted in the business districts shall be permitted in the industrial districts.
>
> One (1) billboard, not to exceed one thousand two hundred (1,200) square feet in area, thirty (30) feet in height and sixty (60) feet in length, including border and trim, per buildable lot in a commercial or industrial district adjacent to an interstate tollway or expressway, but not within five hundred (500) feet of any billboard. . . .

The Zoning Ordinance, however, does not explain what signs are permitted in business or industrial districts. To erect a sign or other structure in the City, a permit must be applied for in writing and issued by the building commissioner. See § 12.2. It also provides an appeal process. See § 12.5.

Covenant expended time and money identifying property owners and entered into lease agreements or received authorization to seek permission to post signs at various locations in the City. The desired sign locations were located in commercial or industrial areas adjacent to major thoroughfares or highways. Covenant prepared and submitted one completed permit application on November 17, 2004. A City official reviewed Covenant's submission and hand wrote a denial on the face of the application. On November 18, 2004, Covenant submitted thirteen additional permit applications. A City official called Covenant on November 18, 2004 to inform it that the City was denying the applications because the City does not permit off-premises signs. The City also wrote Covenant a letter dated November 19, 2004 denying its applications pursuant to Section 11.1 of the Zoning Ordinance, and enclosed a copy of the same.

Each of the application packets Covenant submitted included the appropriate information and documentation, including engineering drawings from an Illinois-certified engineer. Covenant

did not appeal the denial of the applications to the City, and instead filed the instant complaint.

## II. **MOTION TO STRIKE**

Covenant's complaint states that "[t]he City has adopted a comprehensive set of regulations that restricts or prohibits all signs in the City ('Sign Ordinance')." Despite the use of the defined term "Sign Ordinance," the Complaint only cites provisions of the City's Zoning Ordinance as the source of its injuries. Specifically, Covenant cites to Sections 3.2 (definitions), 11.1 (permitted signs in manufacturing districts), and 12.2 (zoning permit). The Complaint does not reference any other statute or ordinance. It also does not attach the permit applications, Zoning Ordinance, or any other document as exhibits.

In its briefing, Covenant also refers collectively to the City's sign regulations as the "Sign Ordinance." Covenant does not define which City codes or regulations are included in its reference. However, Plaintiff attached Section 11.1 of the Zoning Ordinance and a copy of a document entitled "Chapter 70" as an exhibit to the Motion for Preliminary Injunction. Covenant does not explain Chapter 70's relevant context, who it applies to, or if it is part of, or related to, the Zoning Ordinance. Covenant did not attach Chapter 70 to the Complaint or the Motion to Dismiss. Yet, Covenant principally relies on Chapter 70 to support its constitutional arguments.

The City responds that it does not have a "stand-alone sign ordinance." Instead it has a comprehensive zoning ordinance which "regulates signs." The City only discussed the Zoning Ordinance in its briefing on the Motion to Dismiss and Motion for Preliminary Injunction arguing that it is the sole relevant statute because it was the only basis for the City's denial of Covenant's sign applications. It attached only the Zoning Ordinance as an exhibit to the Motion to Dismiss. In its reply brief, the City suggests that the Court should only consider the Zoning Ordinance in evaluating the Motion to Dismiss and requests that the Court disregard Covenant's Chapter 70 arguments.

The Court construes these arguments as a motion to strike Chapter 70 with respect to the Motion to Dismiss. Generally, all documents to be considered in a motion to dismiss must be contained within the pleadings. Despite this general rule, district courts can consider documents in evaluating a motion to dismiss if they are "attached to a motion to dismiss [and] are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *Wright v. Associated Ins. Co.*, 29 F.3d 1244, 1248 (7th Cir. 1994). The Court has relied on the City's Zoning Ordinance in evaluating the Motion to Dismiss because it was referenced in the Complaint, is clearly central to Covenant's claims, and was attached to the Motion to Dismiss.

Conversely, Covenant did not reference Chapter 70 in the Complaint. It did not serve as the basis for the City's denial of Covenant's sign applications, and there is no indication in the present record that Chapter 70 is part of, or an extension of, the Zoning Ordinance. "Documents that are neither included in the plaintiff's complaint nor central to the claim should not be considered on a motion to dismiss." *Albany Bank & Trust Co. v. Exxon Mobil Corp.*, 310 F.3d 969, 971 (7th Cir. 2002). Therefore, the Court has not relied on Chapter 70 in evaluating the City's motion.

Finally, the Court has considered the November 19, 2004 letter from the City to Covenant denying the permit applications (attached as Exhibit C to the Motion for Preliminary Injunction), because it is relevant to the Court's consideration of subject-matter jurisdiction.

### III. **MOTION TO DISMISS**

The City seeks to dismiss Covenant's Complaint under FED. R. CIV. P. 12(b)(1) for lack of subject-matter jurisdiction. When deciding a Rule 12(b)(1) motion, a district court accepts as true all well-pleaded factual allegations and draws reasonable inferences in favor of the plaintiff. *See United Transp. Union v. Gateway W. Ry. Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996). In cases where a party challenges the existence of subject-matter jurisdiction, the court may "look beyond the jurisdictional

allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter exists." *Capital Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993).

The City also seeks to dismiss pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim under which relief may be granted. In considering a Rule 12(b)(6) motion, the court must accept as true all well-pleaded facts and must draw all reasonable inferences from those allegations in plaintiff's favor. *See MCM Partners, Inc. v. Andrews-Bartlett & Assoc.*, 62 F.3d 967, 972 (7th Cir. 1995). The district court shall only dismiss a complaint under Rule 12(b)(6) if it is beyond doubt that the plaintiff can prove no facts that would entitle him to relief. *See id.*

### A. Jurisdictional Challenge

The City asserts that Covenant has standing only to challenge Section 11.1 of the Zoning Ordinance. The City also contends that the action is not ripe for adjudication. The Court must consider these jurisdictional challenges before reaching the merits of the motion. The Court initially notes that in the First Amendment context, the "standing and ripeness requirements are more relaxed than in other contexts." *Covenant Media of Ill., L.L.C. v. City of Des Plaines*, 04 C 8130, 2005 WL 1377859, at *5 (N.D. Ill. June 8, 2005).

### 1. *Ripeness*

The City initially contends that Covenant's claims are not ripe because Covenant did not receive an official written denial of the permit applications. This argument is meritless. In the Complaint, Covenant alleges that the City hand wrote a denial on the first application and that the City telephoned Covenant to convey the denial of the other thirteen applications on November 18, 2004. The City also confirmed the denial in a letter written to Covenant on November 19, 2004.

The City also argues that Covenant's claims are not ripe because it failed to exhaust administrative remedies. Covenant did not appeal the denial to the zoning administrator, amend its application to put the signs at a different location, or petition to amend the zoning ordinance. However, as Covenant points out, the exhaustion requirement does not apply to suits challenging ordinances or statutes as facially invalid. *See Nat'l Adver. Co. v. Town of Babylon*, 900 F.2d 551, 555 (2d Cir. 1990); *Shuttlesworth v. Birmingham*, 394 U.S. 147, 151 (1969)("The Constitution can hardly be thought to deny to one subjected to the restraints of such an ordinance the right to attack its constitutionality, because he has not yielded to its demands." (citation omitted)); *see also Covenant Media*, 2005 WL 1377859 (claims were ripe although no appeal). Accordingly, Covenant presents claims that are ripe for judicial determination.

## 2. Standing

"To establish standing, Covenant must demonstrate '(1) injury in fact (the actual or imminent invasion of a concrete and particularized interest), (2) causation (a causal connection between the defendant's actions and the injury), and (3) redressability (the likelihood that the injury is redressable by a favorable court decision.'" *Covenant Media*, 2005 WL 1377859, at *3 (citation omitted). In the Complaint, Covenant alleged an injury in fact: it expended time and money identifying property owners and entering into leases and subsequently submitted fourteen sign applications that were denied. Covenant also alleged that the City caused the injury: the City denied the applications pursuant to Section 11.1 of the City's Zoning Ordinance. If successful, then Covenant's injury could be redressed through injunctive relief and damages. *See id.* at *4.

Covenant comprehensively attacks the constitutionality of the City's sign restrictions, both as applied to it and as applied to third parties under the overbreadth doctrine. "To avoid chilling the speech of third parties who may be unwilling or unlikely to raise a challenge in their own stead, the overbreadth doctrine in certain circumstances permits litigants already before the court to challenge a regulation on its face and raise the rights of third parties whose protected expression is prohibited or substantially burdened by the regulation." *Schultz v. City of Cumberland*, 228

F.3d 831, 848 (7th Cir. 2000). The City contends that Covenant only has standing to challenge Section 11.1 of the Zoning Ordinance, relying on the Eleventh Circuit decision in *Granite State Outdoor Advertising, Inc. v. City of Clearwater, Fl.*, 351 F.3d 1112 (11th Cir. 2003). The Court disagrees. The Eleventh Circuit itself recently recognized that the "*Clearwater* court overlooked our past Eleventh Circuit precedent . . . when it assumed that under the overbreadth doctrine, a plaintiff can only challenge the one section under which it suffered a concrete injury." *Tanner Advertising Group, L.L.C. v. Fayette County, Ga.*, 411 F.3d 1272, 2176 (11th Cir. 2005). The Eleventh Circuit thus held that "in light of the strong precedent from the Supreme Court and this Circuit concerning the doctrine of overbreadth which preceded the *Clearwater* decision, we are compelled to . . . disregard the narrow approach to the overbreadth doctrine employed by the *Clearwater* court." *Id.* at 1277. The Court concludes that Covenant has standing to challenge the constitutionality of the Zoning Ordinance, both as applied to it, and to third parties under the overbreadth doctrine.

For the foregoing reasons, the City's Motion to Dismiss for lack of subject-matter jurisdiction is **DENIED**.

### B. Merits

Covenant alleges that the "Sign Ordinance" is unconstitutional for the following reasons: it favors commercial over noncommercial

speech (Count I); lacks necessary procedural safeguards (Count II); grants city officials an impermissible level of discretion (Count III); impermissibly discriminates among noncommercial messages (Count IV); prohibits far more speech than can be justified by the City's asserted interests (Count V); does not directly advance any governmental interest in a material way (Count VI); unduly burdens citizen and property owners right to engage in protected first amendment activity (Count VII); impermissibly favors some commercial topics at the expense of others (Count VIII); violates equal protection (Count IX); is too vague in violation due process (Count X); is not narrowly tailored (Count XI); is unconstitutional as applied to Covenant (Count XII); and is unconstitutional as applied to third parties under the overbreadth doctrine (Count XIII). Count XIV contains Covenant's request for injunctive relief. The Court notes that Covenant's Complaint here is nearly identical to the complaint it filed against the City of Des Plaines, Illinois, in another case pending in this district. See *Covenant Media*, 2005 WL 1377859.

Although the Zoning Ordinance clearly defines the terms "sign," "advertising sign," and "business sign," the Court's review reveals that its other sign-related provisions are confusing and poorly drafted. For example, the Zoning Ordinance divides the City into the following ten districts: three residential districts; an office research district; a public land use area; a commercial

business district; a service business commercial district; a community commercial business district; a light industrial district; and a heavy industrial district. § 6.1. There is no designated "manufacturing district." Yet, certain sections refer to the industrial districts as "manufacturing districts." It is unclear if both the light and heavy industrial districts constitute manufacturing districts, and if so, what distinguishing characteristics exist between the two.

The Zoning Ordinance only has one provision dealing strictly with signs - Section 11. Section 11.1, entitled "*Permitted signs, manufacturing district*," is perhaps the most confusing. It provides that "[a]ll signs permitted in the business districts shall be permitted in the industrial districts." It also defines the size and number of billboards permissible "per buildable lot in a commercial or industrial district adjacent to an interstate tollway or expressway." Significantly, the Zoning Ordinance <u>does not</u> define what signs are permitted in the business districts. Further, only the service business commercial and community commercial business districts sections of the Zoning Ordinance cross-reference Section 11.

Accepting as true Covenant's well-pleaded facts, as is required, Covenant's permit applications were located in commercial or industrial areas of the City adjacent to interstate tollways or expressways. *See MCM Partners, Inc.*, 62 F.3d at 972. The City

denied the applications, stating that under Section 11.1, "billboards are only allowed in a manufacturing district adjacent to the expressway." Based upon the confusing language of the Zoning Ordinance relating to signs and the lack of information in the record, the Court cannot discern at this juncture what are commercial, industrial, and manufacturing districts and which signs are actually restricted or permitted in these districts. The Court also cannot determine if the Zoning Ordinance is constitutional as applied to Covenant or to third parties. The Court expects the parties to furnish further information at the preliminary injunction hearing to supplement the record. Because it is possible that Covenant could prove facts that would entitle it to relief, the City's Motion to Dismiss pursuant to Rule 12(b)(6) is **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, the City's Motion to Dismiss is **DENIED**.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Dated: August 19, 2005